UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

**DIAMOND SERVICES CORPORATION**   \*CIVIL NO. 6:11-0772

**VERSUS**   \*JUDGE DOHERTY

**BRITISH EUROPEAN AND OVERSEAS**   \*MAGISTRATE JUDGE HILL
**P&I INSURANCE, ET AL.**

REPORT AND RECOMMENDATION

Pending before the Court is the Motion to Stay and Compel Arbitration filed by defendant British European & Overseas P&I Insurance ("BEO"). [rec. doc. 46]. Plaintiff, Diamond Services Corporation ("Diamond"), has filed Opposition. [rec. doc. 60]. At BEO's request, the Court has considered its Opposition to Diamond's pending Motion for Summary Judgment as a Reply. [rec. doc. 67]. The Motion has been referred to the undersigned for report and recommendation. [rec. doc. 52]. Oral argument on the Motion was held and the Motion was taken under advisement. [rec. doc. 78].

For the following reasons, it is recommended that the Motion to Stay and Compel Arbitration [rec. doc.46] be **GRANTED.**

STATEMENT OF CLAIM

On December 13, 2009, two of Diamond's vessels allegedly sustained damage when a crane barge which was in tow, was grounded, as a result of the tow line breaking. Diamond filed the instant lawsuit in the 16th Judicial District Court for St. Mary Parish, Louisiana, alleging two claims for relief. The first claim is asserted against Diamond's insurance agent, Stiel Insurance Services of New Orleans, Inc. ("Stiel") and Diamond's broker, Colemont

Insurance Brokers of Texas, L.P. ("Colemont") for failure to secure adequate insurance for the damage allegedly sustained by the vessels, and the failure to return excess premiums for the alleged inadequate insurance it obtained. The second claim is against various alleged insurers, including BEO, and their local correspondent, Lamorte Burns and Company, Inc. ("Lamorte Burns") for failure to adjust and timely pay the claims submitted by Diamond for damages to its vessels.

BEO, a Bahamian company, is an internationally-recognized Protection and Indemnity (P&I) Association, or Club. The insurance coverage it provides is set forth in two Certificates of Entry dated September 10, 2009, one for Protection and Indemnity (P&I) coverage and one for Hull and Machinery (H&M) coverage.[1] The P&I Certificate incorporates the Club's Rules of Entry. [*See* Declaration of David Skinner, rec. doc. 22-1, Ex. A]. The P&I Club Rules in effect at the time of the alleged loss herein contained the following arbitration clause[2]:

> 45.4 [Other than claims by the Insurer against the Assured for premiums] All other claims or disputes arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

[rec. doc. 22-4].

---

[1] The Rules of Entry for a P&I Association, or Club, like BEO, are the equivalent of an insurance policy issued by a stock underwriter. *Triton Lines, Inc. v. BE&O Mutual Underwriting Association*, 707 F.Supp. 277, 278 (S.D. Tex. 1989).

[2] The Club Rules contain another arbitration clause in the FD&D Rules. *See* rec. doc. 22-5, FD&D Rules, clause 18-4. However, it appears that only the arbitration clause contained in the P&I Rules is relevant to this action.

On May 20, 2011, BEO removed this action under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). On August 26, 2011, the Court denied Diamond's Motion to Remand. [rec. doc. 24].

In discovery, Colemont produced a single Certificate of Insurance dated September 21, 2009 which combines both P&I and H&M coverages and does not incorporate the Club Rules. Colemont also produced a policy purporting to be the BEO policy in effect at the time of the alleged loss herein. [*See* rec. doc. 60-7, Affidavit of Sandra Andry, and 60-16]. BEO asserts that these documents were created by Colement without the authority or approval of BEO, and, accordingly, do not represent the insurance provided by BEO. [*See* Declaration of David Skinner, rec. doc. 67-3].

The policy produced by Colemont begins with "GENERAL CONDITIONS APPLICABLE TO ALL SECTIONS." [rec. doc. 60-16, pg. 6-18]. Within the General Conditions, the following clause appears:

LAW AND PRACTICE CLAUSE

Notwithstanding anything else to the contrary, this insurance is subject to English law and practice and any dispute under or in connection with this insurance is to be referred to Arbitration in London . . . . In the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail and the right of either party to commence proceedings before any Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder.

[rec. doc. 60-16, pg. 18].

After the "General Conditions", the policy contains various "Sections", including a section for P&I and H&M coverage, setting forth specific provisions applicable to each. The H&M section contains the following provision:

ARBITRATION CLAUSE

In the event of a dispute between the Assured and underwriters, each party shall name a surveyor, which two surveyors shall proceed to draw specifications as to the extent of the damage and the work required to make the damage good . . . In the event the two surveyors cannot agree, they must select an umpire . . . In the event the parties cannot agree upon an umpire, either party hereto may apply to the United Stated District Court in the State of Louisiana for appointment of an umpire, pursuant to the United States Arbitration Act.

[rec. doc. 60-16, pg. 40].

BEO has now filed the instant Motion to Stay and Compel Arbitration, requesting that Diamond be required to arbitrate its claims against BEO in London.

Diamond Opposes the Motion, arguing that its claims implicate only BEO's H&M coverage, which do not incorporate the Club Rules, hence, rendering clause 45.4, which requires arbitration in London, inapplicable. Diamond additionally argues that the more specific domestic arbitration provision contained in the H&M policy provided by Colemont to Diamond creates an ambiguity as to whether Diamond's claims must be submitted to arbitration in London or the United States after appointment of an umpire by this Court, and that this ambiguity must be construed against BEO.

BEO responds that Diamond's claim for expenses incurred in removing its vessel from its grounded location constitutes, in part, a "sue and labor" claim and a wreck removal claim,

4

coverage for which exists under the P&I Club Rules. Moreover, BEO asserts that the extent to which Diamond's claims implicate P&I coverage, as opposed to H&M coverage is, in and of itself, a dispute which must be resolved through arbitration in London under clause 45.4 of the Club Rules.

BEO further argues that the uncontroverted record evidence (the declaration of David Skinner) establishes that the insurance policy provided to Diamond by its broker, Colemont, was created by Colemont without the authority or approval of BEO, and, therefore, does not constitute the insurance provided by BEO. Furthermore, even if the insurance policy provided by Colemont to Diamond was applicable to Diamond's claims, that policy *also* requires that Diamond's claims be arbitrated in London.

Thus, BEO argues that whether this Court looks to clause 45.4 of the P&I Club Rules (as BEO argues) or the insurance policy provided by Colemont to Diamond (as Diamond argues), this Court must stay this case and compel Diamond to arbitrate its claims against BEO in London.

For the reasons which follow, BEO's position is well taken.

## LAW AND ANALYSIS

Arbitration is favored in the law. *Beiser v. Weyler*, 284 F.3d 665, 673 (5th Cir. 2002) *citing Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000), *cert. denied*, 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000). Accordingly, when interpreting arbitration clauses, this Court must resolve all questions with a "healthy regard"

5

for the federal policy favoring arbitration. *Id. citing Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Six Flags Over Texas, Inc. v. International Broth. of Elec. Workers, Local No. 116*, 143 F.3d 213, 215 (5th Cir. 1998).

The Convention "contemplates a very limited inquiry by courts when considering a motion to compel arbitration." Arbitration should be compelled if (1) there is an agreement in writing to arbitrate the dispute, considering whether the arbitration agreement is broad or narrow; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002) *citing Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985). "If these requirements are met, the Convention requires district courts to order arbitration." *Id.*

Each of these elements are met in this case. First, there is a broad written arbitration agreement contained in clause 45.4 of the P&I Rules. Second, the Rules of Entry provide for arbitration in the territory of a Convention signatory – London, England. Third, the agreement arises out of a commercial legal relationship – a contract of insurance between a mutual protection and indemnity association and an insured. *See Lannes, III v. Operators International*, 2004 WL 2984327, *5 (E.D. La. 2004) *citing Rosser, III v. Belle of New Orleans*, 2003 WL 22174282, *4 (E.D. La. 2003) (a marine protection and indemnity insurance

agreement is "part of a commercial legal relationship"). Fourth, BEO is not a citizen of the United States.

While Diamond argues that clause 45.4 of the P&I Rules does not apply to its claims because its claims fall entirely under the H&M coverage provided by BEO, that argument is unpersuasive. With the exception of claims by BEO against Diamond for premiums, the clause at issue requires arbitration of "all . . . claims or disputes arising out of *or in connection with* this Contract." (emphasis added). The clause is therefore broad as opposed to narrow. *See Penzoil Exploration & Production Co. v. Rambo Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (distinguishing "'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract"). In cases involving a broad arbitration clause, "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause . . . . " *Sedco, Inc.*, 767 F.2d at 1145 and fn. 10 *citing Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2nd Cir. 1983); *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993). Since the arbitration agreement is broad, this Court is therefore required to stay the action and allow the English arbitrator to determine whether the dispute falls within the clause. *Hornbeck Offshore*, 981 F.2d at 755 *citing Sedco*, 767 F.2d at 1145 n. 10.

Even if the arbitration clause was narrow, at least part of Diamond's claim apparently falls within the arbitration clause in BEO's Club Rules, thus requiring the entry of a stay and

7

referral to arbitration in London. As noted by BEO, Diamond's claim for expenses incurred in removing its vessel from its grounded location constitutes, in part, a "sue and labor" claim and a wreck removal claim, coverage for which exists under the P&I Club Rules.[3] *See* rec. doc. 22-1, clause 37, pg. 36; clause 20, pg 31-32.

Finally, "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Hornbeck Offshore*, 981 F.2d at 755 *citing Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985). Moreover, "[t]he weight of this presumption is heavy". *Id. citing Mar-Len*, 773 F.2d at 636.

Accordingly, any doubts about the scope of this arbitration agreement must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp.*., 460 U.S. at 24–25. Stated differently, "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue . . . " the Court must presume in favor of arbitration. *Sedco, Inc*. 767 F.2d at 1145 *citing Commerce Park of DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir. 1984) *quoting Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979). This Court cannot say with any assurance, much less positive assurance, that all portions of Diamond's claim falls outside the scope of clause 45.4. Accordingly, arbitration in London is required.

---

[3] By Opposition, the Court notes that Diamond describes the instant dispute as involving "claims for sue and labor resulting from the grounding of its crane barge . . . . " [rec. doc. 60, pg. 11].

Likewise, arbitration in London is required even under the insurance policy provided by Colemont to Diamond. Initially, the Court notes that the uncontroverted affidavit of David Skinner establishes that this insurance policy was created by Diamond's broker, Colemont, without the authority or approval of BEO. [rec. doc. 67-3, par 5]. Therefore, this policy does not constitute insurance provided by BEO. However, even if that insurance policy was applicable to Diamond's claims, that policy nevertheless requires that Diamond's claims be resolved through arbitration in London.

Diamond's ambiguity argument is premised on the "Arbitration Clause" contained in the H&M section of the policy, purporting to provide for domestic arbitration in the United States, following appointment of an umpire by this Court. Diamond's argument is that this domestic arbitration clause conflicts with the London arbitration clause, creating an ambiguity which must be resolved in its favor.

This argument, however, completely ignores the "Law and Practice Clause" set forth as a "General Condition[]" applicable to *all* sections of the policy, *including* the H&M section relied on by Diamond. The "Law and Practice Clause" provides for arbitration in London under English law and under the supervision of English courts, and further clearly and unambiguously requires that "[i]n the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail . . . . "

The domestic arbitration provision in the H&M section of the policy is obviously in conflict with the Law and Practice Clause which calls for arbitration in London. Thus, under

the clear and express language of the policy, the Law and Practice Clause "shall prevail" over the conflicting arbitration provision in the H&M section of the policy, and arbitration in London is therefore required under this policy as well as under the P&I policy.

## CONCLUSION

For the foregoing reasons, it is recommended that the Motion to Stay and Compel Arbitration [rec. doc.46] filed by British European & Overseas P&I Insurance be **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 16th day of May, 2012, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE