RECEIVED
SEP 2 7 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DIAMOND SERVICES CORPORATION | CIVIL ACTION NO. 6:11-0772 |
| VERSUS | JUDGE DOHERTY |
| BRITISH EUROPEAN AND OVERSEAS P&I INSURANCE, ET AL | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"), or alternatively, a motion for summary judgment pursuant to Fed. Rule Civ. P. 56, filed by defendant Colemont Insurance Brokers of Texas, Inc. ("Colemont). [Doc. 39] By way of its motion, Colemont "moves the Court to dismiss plaintiff's claim against Colemont, or alternatively, grant summary judgment in favor of Colemont, based upon peremption of plaintiff's claim against Colemont . . . and, alternatively, to dismiss for failure to state a claim [for the reasons identified in Stiel Insurance Services of New Orleans' ("Stiel") previously filed motion to dismiss] . . . ."[Doc. 39, p.1] For the following reasons, Colemont's motion is DENIED in its entirety.

**I.    Procedural Posture**

At the outset, the Court finds relief pursuant to Rule 12(b)(6) is not appropriate in this matter. In connection with its motion, movant has presented the Court with numerous documents outside of the pleadings, which are neither referred to, nor incorporated by reference, in the complaint; accordingly, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ.

1

P. 12(d); *see also, e.g., Clark v. Tarrant County, Texas*, 798 F.2d 736, 745 (5th Cir. 1986). When a motion to dismiss is converted into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, all parties have had adequate notice that this motion may be treated as one for summary judgment and have had reasonable opportunity to respond. *See e.g. Mackey v. Owens*, 182 F.3d 915, *2 (5th Cir. 1999)(Given Rule 12(d)'s express declaration that a motion to dismiss *must* be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, "the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment"); *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 196 (5th Cir. 1988)(ten days advance notice that a matter will be heard and taken under advisement as of a certain day constitutes a reasonable opportunity to respond). Regardless, all parties have submitted matters outside of the pleadings in connection with this motion, thereby essentially treating the motion as if it were solely seeking summary judgment. Accordingly, this motion is construed by the Court as a motion for summary judgment.

## II.   Factual Background and Analysis

On or about December 13, 2009, two vessels owned by Diamond sustained damage "[d]ue to inclement weather conditions, and twelve (12) to fifteen (15) foot seas." [Doc. 1-1, ¶ 9] According to the petition, the weather and rough seas: (1) caused a tow wire to break, resulting in the grounding of the vessel *SF2200* at Chandelier Island; and (2) "overcame the ship [the D85] and flooded the equipment room." [Id. at ¶10] On March 2, 2011, Diamond filed suit in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, asserting its insurers and their local

correspondent, Lamorte Burns and Company, Inc. ("Lamorte"), had "refused to adequately adjust the claims and timely pay the sums due their insured, **DIAMOND**, as required by Louisiana law and applicable law and jurisprudence." [Doc. 1-1, ¶ 16 (emphasis in original)] Diamond additionally brought claims against Stiel (Diamond's insurance agent) and Colemont (Diamond's insurance broker) for: (1) failure to procure the insurance requested, (2) negligent and/or intentional misrepresentation, (3) return of excess premiums, and (4) fraud. [Doc. 1-1, ¶¶ 3, 4, 24, 25-27; Doc. 66, ¶ 23(g)] The case was subsequently removed to this Court.

The factual allegations giving rise to the claims at issue are set forth in plaintiff's original petition as follows:

3.

> As part of Plaintiff's business, Plaintiff owns and operates several maritime vessels, including a lay barge, D-85 and a crane barge, SF-2200. In the normal course of business, **DIAMOND**, through it [sic] representatives, sought and was quoted prices for maritime insurance. The quoted insurance included hull protection, protection and indemnity, and bumbershoot (excess/umbrella) insurance. The insurance was quoted by and purchased through **DIAMOND's** insurance agent, defendant **STIEL INSURANCE SERVICES OF NEW ORLEANS, INC. (Hereinafter "STIEL").**

4.

> Upon information and belief, defendant **COLEMONT INSURANCE BORKERS [sic] OF TEXAS, L.P. (Hereinafter "COLEMONT")** was the broker who shopped and placed the insurance coverage referenced in the preceeding paragraph.

. . . .

7.

> . . . **STIEL** . . . represented that coverage was bound effective on September

3

10, 2009 and extending through September 10,1 [sic] 2010.

. . . .

24.

Upon information and belief, Defendants, **STIEL** and **COLEMOT** [sic] did not secure insurance which adequately provides coverage for the claims made herein and/or secured coverage through companies which are either defunct, not doing business in the State of Louisiana, and/or not licensed to business [sic] in the State of Louisiana.

25.

In order to assure that it's [sic] vessels were properly insured, **DIAMOND** had to purchase additional insurance with other insurers at a cost of TWO HUNDRED ONE THOUSAND, FOUR HUNDRED NINETY AND 74/100 DOLLARS ($201,490.74).

26.

Despite repeated demands, Defendants, **STIEL** and **COLEMOT** [sic] have failed and refused to return the excess premiums paid by **DIAMOND** for the insurance referenced herein.

27.

Plaintiff **DIAMOND** further alleges that it is entitled to recover damages for premiums paid and which were not earned and/or used to purchase insurance.

[Doc. 1-1, pp. 2-6]

Plaintiff filed a supplemental complaint, asserting additional factual allegations in support of the pending claims:

23(a).

Defendants, **STIEL AND COLEMONT**, were made aware among other requirements by **DIAMOND**, that **DIAMOND's** business activities required that **DIAMOND's** insurance coverage ("security") be placed with companies who were approved and admitted ("white listed") to do business in the State of Louisiana, who were subject to the jurisdiction of Louisiana law and courts, who were Best Rated

4

"A," who were approved by **DIAMOND's** bumbershoot carrier and whose coverage matched the terms of **DIAMOND's** expiring coverage.

23(b).

Defendants **STIEL AND COLEMONT**, made representations to **DIAMOND** that security was bound, matching **DIAMOND's** business activity requirements and matching the expiring terms of **DIAMOND's** existing coverage.

23(c).

Specifically it was represented to **DIAMOND** that security had been placed with International Insurance Company of Hanover, LTD, which was a Best Rated "A" company "whitelisted by the State of Louisiana". Upon information and belief, a "binder" was issued to that effect by **COLEMONT**.

. . . .

23(e).

In truth and fact, security had not been bound as requested by **DIAMOND** or as represented to **DIAMOND** by **STIEL AND COLEMONT**. It was placed with defendant **BE&O**, a company who was not "white listed" in the State of Louisiana, who was not Best Rated "A", whose rules allegedly provide for arbitration under English law in London England, who was not acceptable to **DIAMOND's** bumbershoot coverage and whose terms did not match **DIAMOND's** expiring terms.

23(f).

Despite having knowledge that the security placed by **STIEL** and **COLEMONT** did not fulfill **DIAMOND's** insurance requirements, **STIEL AND COLEMONT** remained silent and did not disclose the truth to **DIAMOND** for several months.

23(g).

These misrepresentations and silence constitute fraud under *LSA C.C. art.* 1953.

23(h).

Before **DIAMOND** had the opportunity to be fully appraised of, and act on the inadequacy of the coverage provided by **STIEL AND COLEMONT**, the

incidents giving rise to the claims made herein, had already occurred.

[Doc. 66 ("First Amending Complaint"), pp. 1-3]

Colemont now seeks dismissal or summary judgment of plaintiff's claim for failure to procure the requested insurance.[1] Colemont's first and primary argument is that plaintiff's claims "are perempted . . . because suit was commenced more than one year after the alleged act, omission or neglect, was discovered by plaintiff." [Doc. 39-1, p.6]

La. R. S. 9:5605 ("Actions for professional insurance agent liability") states as follows:

A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

First, the Court notes plaintiff has asserted the actions of Colemont constitute fraud, as

---

[1] Within its briefing, Colemont solely addresses prescription and peremption of plaintiff's claim for failure to procure requested insurance; Colemont does not argue prescription or peremption of plaintiff's claims of misrepresentation or return of excess premiums, nor does it address the impact of plaintiff's allegation of fraud, as it relates to plaintiff's claim of failure to procure the requested insurance.

defined in La. Civ. Code art. 1953. [Doc. 66, ¶ 23(g); Doc. 67-3, ¶¶ 1, 5[2]] Colemont has not addressed the application of La. R.S. 9:5606(C), as it relates to plaintiff's allegations of fraud.

Furthermore, even were this Court to exclude consideration of plaintiff's allegation of fraud, there still exist in this matter genuine issues of material fact prohibiting summary judgment, most glaringly: on what date should plaintiff have discovered Colemont failed to procure the insurance plaintiff had specifically requested. La. R.S. 9:5606(A). Defendant argues plaintiff should have known either in September of 2009 or on January 8, 2010 of the act, omission, or neglect giving rise to this claim. [Doc. 39-1, pp. 7, 8] However, plaintiff has provided sufficient evidence and argument to create a genuine issue of material fact as to whether its agent (Stiel) received all pertinent policy information during either of those time periods.[3] In fact, plaintiff has presented sufficient evidence

---

[2]Doc. 67-3 is an affidavit of BE&O's Managing Director, declaring: "The P&I and H&M Certificate dated September 21, 2009 and accompanying policy provisions provided by Colemont to Diamond Services Corporation's agent . . . do not represent the BE&O insurance that was in place at the time of the subject loss. Such certificates and provisions were apparently created solely by Colemont and, if they were represented to constitute BE&O's insurance in favor of Diamond Services Corporation, such was done without authority or approval of BE&O."

[3]For example, all that is shown from the documents submitted is that on September 11, 2009, an email was sent from Colemont to Stiel, stating: "Here is the binder and invoice on the account." [Doc. 39-2, p.24] According to an affidavit submitted by Colemont, the Cover Notes and all policy terms were attached to that email. [Doc. 39-2, p. 2] However, as plaintiff points out, without being able to open the attachments, one cannot ascertain what documents were attached to the email. Accordingly, the Court finds the appropriate course of action is to allow the finder of fact to determine the credibility of the affiant, particularly as allegations of fraud (including the creation of a fraudulent insurance policy) have been asserted against Colemont. Furthermore, the evidence before the Court at this juncture appears to indicate that even if Colemont sent Steil "all policy terms" on September 11, 2009, Stiel did not forward same to plaintiff. [*See* Doc. 59-4, pp. 2-3 (correspondence from Stiel to plaintiff, identifying that coverage had been bound with BE&O, invoicing plaintiff for premiums due, and noting, "*Should you need any certificates faxed or emailed immediately, please let me know. I will forward the policies to your attention as soon as they are received* from the respective companies." (Emphasis added))]

On September 18, 2009, Colemont sent an email to Stiel stating in pertinent part, "2) You have provided me with the expiring form and per our previous agreement we are in the process of altering the cover to come as close as possible to match what they had." [Doc. 39-2, p.48] On September 21, 2009, Stiel emailed plaintiff, stating in pertinent part:

7

and argument to show a genuine issue of material fact exists as to whether plaintiff was even made aware of the terms of its coverage until after the filing of this lawsuit. [Doc. 59, pp. 2-4, 7-8] In light of these disputed issues of material fact, summary judgment is not appropriate in this matter.

With regard to Colemont's alternative request for relief - *i.e.* that the claims against it be dismissed for the reasons identified in Stiel motion to dismiss for failure to state a claim [Doc. 25] - the motion is denied for the reasons previously provided by the Court. [*See* Doc. 86]

In light of the foregoing, defendant's motion for summary judgment, or alternatively for dismissal, [Doc. 39] is DENIED in its entirety.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___27___ day of September, 2012.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

I am pleased to report that we have been successful in two things.

1. We have changed carriers to International Ins. Co. of Hannover, Ltd.-Best rated A and white listed by the State of Louisiana.

2. We have changed forms from the BE&O form to the SP-23 Form with all necessary endorsements to match the expiring terms through GCM.

Diane [Stiel employee], I will forward all necessary documentation later this morning and we will need to replace our prior certificates.

[Doc. 59-5, p.1] An email dated January 8, 2010, from Stiel to Colemont (and other persons not identified by the parties) indicates there is still confusion as to whether plaintiff was insured through BE&O or International Insurance Company of Hannover Ltd. [Doc. 39-2, p.51]